UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JILL A. EWING,
                                    Plaintiff,

v.                                                        5:09-CV-0932
                                                          (GHL)

COMMISSIONER OF SOCIAL SECURITY,
                                    Defendant.
_____

APPEARANCES:                                OF COUNSEL:

BLUMKIN, FINLAY & BIXLER, LLP               JOY A. BLUMKIN, ESQ.
*Counsel for Plaintiff*
401 East State Street, Suite 300
Ithaca, New York 14850

SOCIAL SECURITY ADMINISTRATION              KAREN T. CALLAHAN, ESQ.
Office of Regional General Counsel          Special Assistant U.S. Attorney
*Counsel for Defendant*
26 Federal Plaza - Room 3904
New York, New York 10278

GEORGE H. LOWE, United States Magistrate Judge

## MEMORANDUM DECISION AND ORDER[1]

## I.      BACKGROUND

### A.      Procedural History

This case presents a complex history.

On September 26, 2002, Plaintiff protectively filed an application for disability insurance

benefits ("DIB").  T[2] 79-84.  Plaintiff also filed an application for Supplemental Security Income

("SSI") benefits.  T 534-37.  On October 4, 2002, Plaintiff filed an application for child's insurance

benefits.  T 85-92.

_____

[1]  This matter is before the Court by consent of both parties.  Dkt. No. 10.

[2]  "T" refers to the administrative transcripts filed at Docket Numbers 6 and 9.

In her applications for DIB and child's insurance benefits, Plaintiff alleged disability as of January 1, 1981, due to asthma and constant cold symptoms.  *See* T 79-84, 108.  In her application for SSI benefits, Plaintiff alleged disability as of 1976 due to asthma and allergies.  T 534.

After all three applications were denied initially on March 5, 2003, a hearing was held before an Administrative Law Judge on May 3, 2004.  T 541-82, T 664-707.  Plaintiff testified, as well as a medical expert and a vocational expert.  *Id.*  On July 18, 2005, ALJ William B. Russell issued a decision finding that Plaintiff was not disabled under the Act, and thus, she was not entitled to DIB, SSI, and child's insurance benefits.  T 25-30B.

On January 6, 2006, the Appeals Council denied Plaintiff's request for review.  T 8-11.  Plaintiff then commenced an action in this Court on March 3, 2006.  Case No. 5:06-CV-0271(GHL).  On August 7, 2007, this Court remanded the matter to the Commissioner because (1) the ALJ failed to provide "good reasons" for the weight he afforded the opinion of Plaintiff's treating physician; (2) the ALJ's finding that Plaintiff had the RFC to perform other work was not supported by substantial evidence; and (3) the ALJ improperly addressed Plaintiff's credibility.  *Id.* at Dkt. No. 12; T 615-32.

On August 27, 2008, the Appeals Council vacated the ALJ's decision and remanded Plaintiff's claims for further proceedings.  T 638-40.  A supplemental hearing was scheduled; however no hearing was held because Plaintiff waived her right to appear at the hearing.  T 645.

On April 16, 2009, ALJ Elizabeth W. Koennecke issued a decision regarding the DIB and SSI applications.  T 583-99.  The ALJ found, *inter alia*, that prior to February 12, 2002, Plaintiff was not disabled and was capable of performing sedentary work.  *Id.*

The ALJ also issued a decision regarding the child's insurance benefits application.  T 708-

19. The ALJ noted that in order to be entitled to entitled to these benefits, Plaintiff must have a disability that began before she attained age 22.  T 712.  The ALJ concluded that Plaintiff was not under a disability at any time prior to September 18, 1981 (the date Plaintiff attained age 22).  T 708-19.

It appears that the ALJ's decisions became the final decision of the Commissioner.[3]  Plaintiff then commenced the present action.  Dkt. No. 1.

### B.    The Contentions

Plaintiff argues that this case should be remanded solely for the payment of benefits.  Dkt. No. 8.  In support of this request, Plaintiff makes the following arguments:

(1) The ALJ "erroneously failed to provide good reasons for refusing to give controlling weight to the opinion of the claimant's treating physician."  Dkt. No. 8 at 10-19.

(2) The ALJ's determination that the Plaintiff had the residual functional capacity ("RFC") to perform other work is contrary to law and not supported by substantial evidence.  Dkt. No. 8 at

---

[3]  Neither party specifically addressed how the ALJ's decisions became the final decision of the Commissioner.  In fact, Defendant incorrectly asserted that "the Appeals Council denied [P]laintiff's request for review on October 31, **2008**. Tr. 122-24." Dkt. No. 11 at 4 (emphasis added).  This assertion is factually impossible, since the ALJ issued her decisions on April 16, **2009**.  Moreover, the citation provided by Defendant is incorrect.

In any event, it appears that the ALJ's decisions became the final decisions of the Commissioner.  In her decision, the ALJ noted that if Plaintiff did not file written exceptions and the Appeals Council did not act on its own motion to review her case, the ALJ's decision would become the final decision of the Commissioner "after remand on the 61st day after the date of [her decision]."  T 584.  Plaintiff would then have 60 days in which to file a new civil action in federal district court.  *Id.*  Therefore, Plaintiff could file a new civil action between the 61st and 121st day after the date of the ALJ's decision.  T 585.  Plaintiff's attorney commenced this case 120 days after the ALJ's decision.

I also note that Defendant takes no issue with the timeliness of this action or the jurisdiction of this Court.  In fact, Defendant admits that Plaintiff complains of a "final decision" and that Plaintiff exhausted her administrative remedies.  Dkt. No. 7 (Answer).

19-21.

Unusually, Defendant also argues that the case should be remanded.  Dkt. No. 11.  However, Defendant argues that the case should be remanded so that the Commissioner may consider new information regarding Plaintiff's student status.  Dkt. No. 11.[4]

## II.   APPLICABLE LAW

### A.     Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 416.920 (2006).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v.*

---

[4]  Defendant noted that "the Commissioner offered to remand this case for further proceedings based on new evidence [P]laintiff submitted with her District Court complaint. Plaintiff declined to stipulate to remand."  Dkt. No. 11 at 4.

4

*Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [20 C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003).  If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy.  *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

A plaintiff-claimant is entitled to child's insurance benefits if she is eighteen years old or older and became disabled before her twenty-second birthday.  20 C.F.R. § 404.350(a)(5).

**B.      Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Serrano v. Barnhart*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258.

6

However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.   THE PLAINTIFF

Plaintiff was born on September 19, 1959.  T 79.  She graduated from Cornell University with a degree in human development and family studies.  T 105, 576.  She also attended massage school.  T 105.  Plaintiff's work experience is extremely limited.  In 1979 she worked full time for two-and-a-half months as a nurses' aide.  T 560.  In 1980 and 1981 she worked part-time as a waitress.  T at 560-561.  Thereafter, she worked intermittently as a gardener and massage therapist. T 558-559.

## IV.   DISCUSSION

### A.   Treating Physician's Opinion

Plaintiff argues that the ALJ "erroneously failed to provide good reasons for refusing to afford controlling weight to the opinion of Plaintiff's treating physician," Dr. Daniel Blumkin, M.D.[5]  Dkt. No. 8 at 10-11.  Defendant concedes that the ALJ's analysis contained incorrect assumptions.  Dkt. No. 11 at 16-18.

Dr. Blumkin had a lengthy treating relationship with Plaintiff, which I described in my prior decision as follows:

> [Dr. Blumkin] treated Plaintiff for asthma on at least 19 occasions from 1979 to 2002.  (T. at 279-280.)  In addition, other staff members at Dr. Blumkin's office

---

[5]  Plaintiff's attorney, Joy Blumkin, disclosed that Dr. Blumkin is her brother.  Dkt. No. 8, at 4, n.5.

7

treated Plaintiff for her asthma on at least 16 occasions between 1985 and 2002. (T. at 280.) From 1979 to 1995, Plaintiff received 240 allergy shots at Dr. Blumkin's office. (T. at 280.)

Dr. Blumkin prepared an affirmation for the record. He affirmed that Plaintiff "was the most severely limited asthmatic patient I ever had in my care." (T. at 281.) Dr. Blumkin affirmed that "I understand that (Plaintiff) also says she feels as though she almost always has a cold, and she suffers from exhaustion. This is consistent with my knowledge of her condition through my review of medical records and my own physical examinations." (T. at 281A.)

Dr. Blumkin placed the following limitations on Plaintiff: "she cannot walk more than 15 minutes at a time, up to three or four times a day. She cannot lift or carry more than five pounds frequently. She should avoid exposure to smoke, dust, respiratory irritants, and extremes in temperature. She could not appear at a worksite day in and day out because of frequent asthma attacks and upper respiratory infections. I believe that she would be absent from work due to asthma-related illness approximately 30% to 40% of the time." (T. at 281A.)

*Ewing*, Case No. 5:06-CV-0271, Dkt. No. 12, at 7-8.

According to the "treating physician's rule,"[6] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); *see also GreenYounger v. Barnhart*, 335 F.3d 99, 105 (2d Cir. 2003); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (*citing Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.1998)).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. §

---

[6] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." *de Roman v. Barnhart*, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

404.1527(d)(1)-(6), the ALJ should consider the following six factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors. *See de Roman*, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2)); *see also Shaw*, 221 F.3d at 134; *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

Here, the ALJ afforded "little weight" to Dr. Blumkin's opinion. T 595, 726. She offered the following reasons for rejecting this opinion.

**First**, the ALJ found that "Dr. Blumkin only began treating the claimant in 1985 [which is] four years after the alleged onset of disability and three years after her date last insured." T 595, 716. However, as Plaintiff points out, Dkt. No. 8 at 14, Dr. Blumkin began treating Plaintiff in 1979. *See* T 279, ¶2. Therefore, the ALJ's finding is incorrect.

**Second**, the ALJ found that "no records even exist from which [Dr. Blumkin] could draw his conclusions. The records that are available do not show treatment for asthma prior to 1985, only treatment for food allergy." T 595, 716-17. However, as Plaintiff points out, records from Tompkins Community Hospital, which are from 1983 and 1988, note Plaintiff's seven-year and twelve-year history with asthma, respectively. T 143, 198, 291. Moreover, Sherry Rogers, M.D., an allergist, noted on August 28, 1984 that Plaintiff "had asthma" since she was sixteen-years old. T 179. Therefore, the ALJ's finding is incorrect to the extent that there are records which note Plaintiff's asthmatic history.

**Third**, the ALJ found that during the early 1980s, Plaintiff was a full-time college student

who also worked part-time as a waitress in 1981.  T 595-96, 717.  The ALJ described this

information as the "best evidence" of Plaintiff's ability to engage in work activities.  T 595, 717.

However, as pointed out by Plaintiff and conceded by Defendant, this conclusion was incorrect.

Dkt. No. 8 at 14, Dkt. No. 11 at 16-17.  Regarding the full-time student finding, Plaintiff submitted

an affidavit to this Court in which she stated that she attended college on a part-time basis due to

asthma, respiratory infections, fatigue, and the effects of steroid treatment.  Dkt. No. 8-2.  Regarding

the part-time waitress work, Plaintiff's earnings during her time in college were almost nonexistent.

Plaintiff stated that she attended Cornell University from 1981 to 1986.  Plaintiff's earnings record

reflected earnings of $1,092.45 in 1981 and no earnings for the years 1982-1986.  T. at 646.

Therefore, the ALJ's finding that Plaintiff was a full-time college student who also worked part-

time as a waitress is incorrect.

     **Fourth**, the ALJ cited certain activities performed by Plaintiff and Plaintiff's interest in

becoming pregnant.  T 596.  Specifically, the ALJ noted that in 2000, "the claimant reported that she

had been camping a lot.  Therefore how exhausted could she have been?"  *Id.*  The ALJ also noted

that Plaintiff reported in 2001 that she performed gardening and bike riding for exercise.  *Id.*  The

ALJ further noted Plaintiff's "interest[] in becoming pregnant.  Therefore she was planning a course

of action that would require her to care for a child, an activity that would require more than

sedentary exertion and more than the ability to show up only 40% of the time."  T 596.  The ALJ

found that "[t]hese activities are wholly inconsistent with Dr. Blumkin's assertion that the claimant

could not walk more than 15 minutes at a time or carry more than 5 [pounds] since 1979."  T 596.  It

is unclear how the activities cited by the ALJ, as well as Plaintiff's *interest* in becoming pregnant,

are "wholly inconsistent" with Dr. Blumkin's opinion.  The references to camping, gardening, and

biking contain no information regarding the walking and carrying demands. Moreover, the fact that Plaintiff expressed an *interest* in becoming pregnant *in no way* contradicts Dr. Blumkin's findings regarding walking and carrying.

Accordingly, I find that the ALJ failed to provide good reasons for her rejection of the treating physician's opinion. Moreover, I find that the ALJ failed to discuss clearly whether the opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the record, as well as failed to discuss the six factors set forth in 20 C.F.R. § 404.1527(d)(1)-(6). For these reasons, the matter is remanded for a proper evaluation of the treating physician's opinion.

### B.     Residual Functional Capacity

Plaintiff argues that the ALJ erroneously determined that Plaintiff could perform a full range of sedentary work. Dkt. No. 8 at 19-21. Plaintiff argues that the ALJ erroneously based part of her decision on parts of Plaintiff's testimony. *Id.* As noted, Defendant requests that the matter be remanded. Dkt. No. 11 at 16-18.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing despite his or her impairments. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomatology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis. *Id.; Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)(Hurd, D.J.).

To properly ascertain a claimant's RFC, an ALJ must assess a claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. § 404.1569a. Non-exertional limitations or impairments, including impairments that result in postural

11

and manipulative limitations, must also be considered.  20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions that the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150.  Further, "(t)he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)."  S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A.).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150.

Here, the ALJ found that prior to February 12, 2002, Plaintiff had the RFC to perform a full range of sedentary work.  T 593, 716.  In making this determination, the ALJ discredited Plaintiff's testimony.  T 596.  The ALJ stated that "[b]ased on her activities during the period at issue, her assertion that she was as limited as alleged since 1981 is not credible."  *Id.*

However, as discussed below, in the absence of "good reasons" for rejecting Dr. Blumkin's opinion, the ALJ should not have reached the issue of Plaintiff's credibility.[7]

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).

---

[7]  I also note that the RFC determination is necessarily flawed because, as previously discussed, the ALJ erred in evaluating Dr. Blumkin's opinion.

12

To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529 (2006); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998) and SSR 96-7p. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms. SSR 96-7p. This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id.* If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *Id.*

However, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Id.* Whenever a claimant's statements about the intensity, persistence, or limiting effects of the claimant's pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the claimant's credibility. *Id.* A claimant's symptoms will be determined to diminish his/her capacity for basic work activities to the extent that his/her alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record. *Id.*

A claimant's symptoms can sometimes suggest a greater level of severity than can be shown

by the objective medical evidence alone.  *Id.*  When the objective evidence alone does not

substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must

assess the credibility of the claimant's subjective complaints by considering the record in light of the

following symptom-related factors:  (1) claimant's daily activities; (2) location, duration, frequency,

and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage,

effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment

received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7)

any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20

C.F.R. § 404.1529(c)(3).

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported

by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at

*29-*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999)

and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30,

1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such

findings are entitled to deference because the ALJ had the opportunity to observe the claimant's

testimony and demeanor at the hearing.")).

The Court previously summarized Plaintiff's testimony as follows:

Plaintiff testified that she has asthma and allergies and consistent cold symptoms.
"I'll wake up with a headache, sore throat, congestion and I have to go back to bed
basically.  Mostly I'm afraid of it developing into severe asthma because that's when I
ended up with a respirator machine ... I've been on steroids for 27 years and they
deteriorate your whole body (and) depress the immune system."  She estimated that
she has cold symptoms 50-75% of the time.  The "most important thing" for relieving
the symptoms is "resting, getting a lot of rest ... staying in bed."  (T. at 551.)  She
testified that when she is feeling only head cold symptoms, she is able to "function
with light housework and take care of the baby."  (T. at 552.)  However, when the

14

Case 5:09-cv-00932-GHL   Document 14   Filed 03/31/11   Page 15 of 17

symptoms "get into my lungs" she needs to rest more and get childcare help from her husband, her parents, or neighbors.  (T. at 552.)  She estimated that "it gets into" her lungs about one week per  month.  (T. at 552.)  She testified that she rests "about four hours a day in the mornings when I don't feel well.  Even if I feel well I rest because I don't want to get worse, so I'm usually in bed until 11:00 or 12:00 every day just resting, sometimes sleeping."  (T. at 553.)

Plaintiff testified that if she worked full time "I think I would have to use the steroids all the time and ... you're not supposed to stay on those steroids."  (T. at 559.) She testified that if a job began at 1:00 and ended at 5:00 or 6:00, she could do that "maybe about a quarter of the time or a half the time."  (T. at 553.)

Regarding her current efforts to work, Plaintiff testified that she gives a massage about once a week, but that she cancels her appointments if she feels sick. (T. at 558.)  She testified that she would not be able to perform massage therapy on a full-time basis because she would have to use steroids all the time, which is not medically advisable.  (T. at 559.)  Other than massage therapy, Plaintiff's only work outside the home is some gardening.  In the summer of 2003, she worked about three hours a week.  (T. at 559.)

Plaintiff described her typical day as waking up continuously every two or three hours with the baby or due to her asthma and then going back to sleep, from 10:30 at night to 11:00 a.m. or noon. (T. at 561A.)  After getting up, she would do some gardening or a massage if she was feeling well.  (T. at 561A.)  When ill, she would "just go to appointments (such as the) chiropractor, acupuncture appointments, and I take care of laundry and dishes and cleaning and housework, just take care of regular life." (T. at 561A.)  She testified that she did not do housework and laundry and cleaning steadily. (Id.)  Regarding grocery shopping, she testified that she would only buy a full weeks' worth of food if accompanied by her husband.  On 75% of grocery trips with her husband she would walk through the store and on 25% of the trips she would go in a wheelchair or ride in the shopping cart.  (T. at 562.)

In a form she completed as part of her disability application, Plaintiff reported that she goes to the chiropractor three times a week, attends three 12-step meetings per week, visits her acupuncturist twice per week, and attends Quaker meeting once per week.  (T. at 125.)

*Ewing*, Case No. 5:06-CV-0271, Dkt. No. 12 at 16-17.

Here, the ALJ discredited Plaintiff's testimony.  T 596.  The ALJ stated that "[b]ased on her

activities during the period at issue, her assertion that she was as limited as alleged since 1981 is not

credible." *Id.*

As discussed above, an ALJ must only assess a claimant-plaintiff's credibility when "the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms." 20 C.F.R. § 404.1529(c)(3). Here, Dr. Blumkin's affirmation that Plaintiff's exhaustion "is consistent with my knowledge of her condition" and that Plaintiff would be absent from work 30% to 40% of the time substantiated the limiting effects to which Plaintiff testified. In the absence of "good reasons" for rejecting Dr. Blumkin's opinion, the ALJ should not have reached the issue of Plaintiff's credibility. Accordingly, remand is appropriate.

### C.    Nature of Remand

Plaintiff argues that this claim should be reversed and remanded for calculation of benefits. Dkt. No. 8 at 21-22. Plaintiff argues that the record contains persuasive proof of disability and remand for further evidentiary development would serve no purpose. *Id.*

Defendant argues that the matter be remanded so that the Commissioner may reevaluate Plaintiff's claims in light of the new information regarding her student status. Dkt. No. 11 at 16-20. Defendant also argues that an award of benefits based on the present record would be inappropriate because the record does not contain persuasive proof of disability. *Id.*

Under the Act, a court "shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (fourth sentence). "Where there are gaps in the administrative record or the ALJ has applied an improper legal standard," the Second Circuit has indicated that remand "for further development of the evidence" is proper. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (internal citations omitted). "In other situations, where [the] Court has had no apparent basis

16

to conclude that a more complete record might support the Commissioner's decision, [the Court has] opted simply to remand for a calculation of benefits." *Id.* at 83.  Thus, the Second Circuit has reversed and "ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

Here, there is a gap in the record regarding Plaintiff's student status from 1981 to 1986. This time period is significant because it is during the time period in question.  Therefore, the Commissioner is directed to develop the record in this regard.

WHEREFORE, it is hereby

ORDERED, that this matter is REMANDED to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[8] for further proceedings consistent with the above.

Dated: March 31, 2011
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

[8] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).